# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **GLEN STEWART** | **CASE NO.  3:21-CV-03789** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CALEB LOFTIN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## <u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Sheriff Gary Gilley.[1]  [doc. #92].  The motion is opposed.  [doc. #102].

For reasons detailed below, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED**.

## <u>Background</u>

Plaintiff Glen Stewart ("Stewart") initiated this action on October 27, 2021, seeking declaratory relief, as well as compensatory, consequential, and punitive damages, along with attorney's fees and costs, against Caleb Loftin ("Loftin"), Justin Morris ("Morris"), Doe Officers

---

[1] The Court has been advised of Sheriff Gilley's recent death.  Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." FED. R. CIV. P. 25(d). For the sake of clarity, this Report and Recommendation will continue to refer to Gilley, despite his automatic substitution under the law. Counsel should take the necessary steps to formally substitute the appropriate defendant pursuant to Rule 25(d).

1-5, Robert Hodges ("Hodges"), and Gary Gilley ("Gilley").  [doc. #1].  On November 30, 2021, Gilley and Loftin filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [doc. #14].  In response, Stewart filed a First Amended Complaint on December 21, 2021.  [doc. #17].

Hodges and Gilley subsequently filed separate motions to dismiss the claims asserted against them.  [docs. #18, 19].  Thereafter, Loftin, Hodges, and Gilley jointly moved to stay the case pending resolution of Stewart's criminal charges.  [doc. #33].  The Court granted the motion on June 15, 2022, and administratively terminated all then-pending motions without prejudice. [doc. #66].  On June 12, 2024, all parties filed a Joint Status Report informing the Court that Stewart's criminal proceedings had been resolved.  [doc. #73].  Accordingly, the Court lifted the stay on July 8, 2024.  [doc. #76].

Stewart filed a Second Amended Complaint on July 29, 2024, rendering the previously pending motions to dismiss moot.[2]  [docs. #81, 83].  In this Second Amended Complaint, Stewart asserts that Loftin, Morris, Doe Officers 1-5, Hodges, and Gilley violated his constitutional rights and Louisiana law.  (Second Amended Complaint [doc. #81, p. 2]).  Additionally, Stewart names Doe Insurance Companies 1-10 as Defendants, alleging that they have issued and currently maintain one or more policies covering at least one of the Defendants.  *Id.* at p. 6.

Stewart, a Black male, was eating a hamburger in his car while driving on the evening of November 7, 2020.  *Id*. at p. 2.  Loftin, a deputy of the Richland Parish Sheriff's Office ("RPSO"),

---

[2] An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  Here, there is no indication that the amended complaint adopted or referenced the earlier pleading.  Thus, the Second Amended Complaint is the operative pleading.

pulled him over. *Id.* Upon approaching the driver's side of the vehicle, Loftin identified himself to Stewart using a false name. *Id.* at p. 7. Loftin informed Stewart that he had been stopped for driving seventy-five miles per hour in a fifty-five-mile-per-hour zone. *Id.*

Stewart provided Loftin with his insurance and driver's license, but Loftin repeatedly insisted that they were incorrect. *Id.* at p. 8. In response, Stewart reached into his glove compartment to search for other documents. *Id.* As Stewart withdrew some papers, Loftin suddenly drew his firearm, pointed it directly at Stewart's face, and shouted, "Gun! You have a gun!" *Id.* at pp. 3, 8. Fearing for his life, Stewart pressed the gas pedal and drove to his home, which was a one and one-half miles away, with Loftin closely following in his law enforcement vehicle. *Id.* at pp. 3, 8.

Upon arriving home, Stewart exited his vehicle with his hands raised. *Id.* at pp, 3, 9. Other officers soon arrived, and Stewart was handcuffed without resistance. *Id.* at p. 3. While standing next to the police unit vehicle, Loftin told Stewart, "You know you f****d up, don't you?" *Id.* Loftin, along with three other officers, including Louisiana State Trooper Justin Morris, then tackled Stewart to the ground, forcibly held his handcuffed hands above his head, beat him, and deployed a taser against him. *Id.* During the assault, Stewart struggled to breathe, visibly shook, and pleaded with his wife, saying, "Don't let them kill me." *Id.*

When the beating concluded, Stewart was lifted to his feet, gasping for air. *Id.* at p. 5. Stewart's wife begged officers to allow him to use his inhaler, as he has asthma and was struggling to breathe. *Id.* Although officers briefly handed Stewart the inhaler, they took it away before he could use it effectively. *Id.* Stewart was then transported to Franklin Parish Jail, but due to the severity of the incident and his inability to breathe properly, he lost consciousness en route. *Id.*

3

As a result of this encounter, Stewart has suffered significant and lasting harms. *Id.* at p. 15. He experienced soreness for several weeks from the handcuffs and beating. *Id.* at p. 16. He also sustained scarring from "excessive use of a taser." *Id.* Additionally, Stewart has been diagnosed with Post-Traumatic Stress Disorder and has been prescribed Paroxetine to manage his symptoms. *Id.*

Prior to November 7, 2020, Stewart had heard from friends that RPSO officers were targeting black men. *Id.* at p. 7. Specifically, officers were allegedly pulling them over and justifying the stops by falsely accusing them of speeding. *Id.* Stewart believes that "conducting pretextual traffic stops on the basis of race is such a pervasive policy, practice, and custom in the RPSO that it has become a *de facto* policy." *Id.* at p. 8.

Stewart further alleges that Louisiana State Police ("LSP") has a pattern of using excessive force against black men. *Id.* at p. 10. He points to widely publicized incidents involving LSP Troopers, including the killing of Ronald Greene in 2020 and the beating of Antonio Harris at the border between Richland and Franklin parishes. *Id.* at pp. 10-12. Stewart also asserts that Morris was involved in another racially motivated excessive force incident, where a black man, Morgan Blake, was beaten while already handcuffed. *Id.* at p. 11. The officers involved in these incidents, including those who allegedly beat Stewart, are members of Troop F, a division of the LSP that is under investigation for excessive force. *Id.* at pp. 11-12.

As for RPSO, Stewart cites five specific instances where RPSO officers allegedly employed excessive force against individuals who had already been handcuffed and were not resisting arrest. *Id.* at pp. 14-15.

To obtain further evidence for this action, Stewart's counsel submitted a public records request under the Louisiana Public Records Act ("LPRA") for certain RPSO data. *Id.* at p. 16. The first request was sent on March 2, 2021, and the second on September 29, 2021. *Id.* RPSO provided documents in response to the first request but has not responded to or produced documents for the second request. *Id.* at p. 17. Stewart asserts that this is not the first time RPSO has ignored an LPRA request regarding its policing data. *Id.*

Loftin, Morris, and Doe Officers 1-5 are being sued in their individual capacities. *Id.* at pp. 5-6. Hodges and Gilley are being sued in their official capacities. *Id.* at p. 6. Stewart asserts the following claims against Loftin, Morris, Doe Officers 1-5, and Doe Insurance Companies 1-10: (1) excessive force in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments; (2) deliberate indifference to medical needs in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; (3) failure to intervene in use of excessive force in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. *Id.* at pp. 18-20.

Stewart also brings state law claims for battery, assault, and intentional infliction of emotional distress against Loftin, Morris, Gilley, Doe Officers 1-5, and Doe Insurance Companies 1-10. *Id.* at pp. 21-24. Against Gilley and Doe Insurance Companies 1-10, Stewart asserts claims of *Monell* liability for pretextual seizures and excessive force. *Id.* at pp. 24-28. Additionally, Stewart seeks a declaratory judgment of *Monell* liability for Excessive Force in violation of the Fourth, Eighth, and Fourteenth Amendments against Hodges. *Id.* at pp. 29-31.

Stewart further asserts a claim for unreasonable seizure in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments against Loftin and Doe Insurance Companies 1-10. *Id.* at p. 31. His final cause of action is against Gilley for violating Louisiana Revised Statute § 44:1. *Id.* at pp. 31-32.

Stewart seeks the following relief from the Court: (1) a declaration that Defendants' conduct violated the Fourth, Eighth, and Fourteenth Amendments; (2) compensatory and consequential damages; (3) compensation for economic losses; (4) punitive damages; (5) injunctive relief ordering RPSO to produce records responsive to his requests under the LPRA; (6) attorneys' fees and costs; and (7) pre and post judgment interest at the lawful rate. *Id.* at p. 33.

On August 19, 2024, Gilley filed a Motion to Dismiss certain claims against him for failure to state a claim upon which relief can be granted. [doc. #92]. In his motion, Gilley argues that Stewart does not have a cause of action arising under the LPRA. *Id.* at p. 10. He contends that only an individual who makes a public records request and is denied has a cause of action. In this case, that individual was Stewart's attorney, Abby Bloetscher, not Stewart himself. *Id.*

Regarding Stewart's *Monell* liability claim against Gilley for a policy of pretextual seizures, Gilley contends that Stewart's pleading fails to identify a single instance in which RPSO was accused of conducting a pretextual stop. *Id.* at p. 13. He further argues that Stewart has not established a policy, practice, or custom of excessive force. *Id.* at p. 14. Of the six lawsuits cited by Stewart, Gilley notes that only one resulted in a finding of constitutional violations. *Id.* at p. 17. As for Stewart's claim of failure to train, supervise, or discipline RPSO employees, Gilley contends that Stewart fails to meet the high standard required. *Id.* at p. 21. Stewart has "failed to allege specific facts to establish a pre-existing pattern of bad acts similar to the ones alleged in this case, save the [one isolated matter where] the offending deputy was both terminated and arrested by RPSO." *Id.* at p. 22. Additionally, Gilley asserts that Stewart's inadequate hiring claim is conclusory and lacks specificity. *Id.* at p. 23. Thus, Gilley seeks dismissal of these claims under Federal Rule of Civil Procedure 12(b)(6). *Id.* at pp. 24-25.

On September 26, 2024, Stewart filed an opposition to Gilley's motion. [doc. #102]. Stewart contends that Gilley's motion to dismiss fails for three reasons: "(1) [Stewart] has adequately alleged that RPSO's widespread practices concerning excessive force and pretextual seizures constitute a policy or custom under *Monell*; (2) [Stewart] has adequately alleged that RPSO has a pattern of constitutional violations, which the U.S. Supreme Court recognized is sufficient at the Rule 12 stage to infer inadequate training, supervision, and discipline and to establish a policy or custom for *Monell* liability . . .; and (3) [Stewart] maintains his LPRA claim because his counsel acted as his agent in submitting that LPRA request." *Id.* at pp. 12-13. Regarding the LPRA claim, Stewart asserts that the legal authority cited by Gilley is "outdated and ignores fundamental principles of agency." *Id.* at p. 10. As for his *Monell* liability claims, Stewart contends that he has sufficiently alleged a policy or custom of using excessive force by detailing prior instances of misconduct against Richland Parish citizens. *Id.* at p. 14. He further argues that he has properly alleged a pattern of RPSO conducting pretextual seizures against "Black Louisianans." *Id.* at p. 19. Additionally, Stewart maintains that he has pleaded enough facts to demonstrate Gilley's deliberate indifference in failing to train, supervise, and discipline RPSO deputies. *Id.* at pp. 22-23.

On October 16, 2024, Gilley filed a reply to Stewart's opposition. [doc. #105]. In his reply, Gilley notes that Stewart conceded his inadequate hiring claim, arguing that this amounts to an acknowledgment that the claim cannot be supported and should be dismissed. *Id.* at pp. 2-3. Gilley further maintains that Stewart has failed to sufficiently plead the existence of an unconstitutional policy, custom, or practice regarding any of his *Monell* liability claims. *Id.* at p. 4. Specifically, he asserts that Stewart has identified only one alleged pretextual stop—his own—which is insufficient to establish a policy, practice, or custom for *Monell* liability. *Id.* at p. 6. Finally, Gilley

reiterates that Stewart's attorney was not acting as his agent when submitting the records request, and, therefore, Stewart lacks standing to pursue the LPRA claim. *Id.* at pp. 8-9.

Accordingly, the matter is ripe.

## Law & Analysis

### I.    Legal Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678.  A pleading comprised of "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.*  "[P]laintiffs must allege facts that support the elements of the

cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly,* 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

In assessing whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted). The Court also may consider documents that a defendant attaches to its motion, so long as the documents are referred to in the complaint and are central to the plaintiff's claims. *Id.* (citing, *inter alia*, *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (courts must consider the complaint, plus documents incorporated into the complaint by reference, and matters of which a court may take judicial notice).

## II.    Section 1983 Claims

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. §

1983.  The statute does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).  "'Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983.'"  *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).  Section 1983 suits may be brought against individuals in their official or individual capacity, as well as against a government entity.  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)).

### *(a) Monell Liability*

Stewart sues Gilley in his official capacity.  Official capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit.  *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023).  In Louisiana, the sheriff is the final policymaker.  *See* LA. CONST. art. 5 § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish."); LA. REV. STAT. § 13:5539(C) ("Each sheriff . . . shall preserve the peace and apprehend public offenders."); *see also Craig v. St. Martin Par. Sheriff*, 861 F. Supp. 1290, 1301 (W.D. La. 1994).  Since Gilley is the policymaker for RPSO, Stewart's § 1983 claims must satisfy the requirements outlined by the United States Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

To successfully state a *Monell* claim, a plaintiff must prove that he was deprived of a federally protected right pursuant to an official municipal policy promulgated by a municipal policymaker.  *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).  An official policy may be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority.  *Sweetin v. City of*

*Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022).  For a practice to constitute a custom, it must have occurred for so long or so frequently that "'the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice'" of municipal employees.  *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)).  There is a "single incident exception" to the policy or custom requirement, but the exception is "extremely narrow." *Valle*, 613 F.3d at 542 (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

Concerning the policymaker prong, "'[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.'"  *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).  The Fifth Circuit distinguishes between final policymaking authority and final decision-making authority.  *Id.*  An individual is a final policymaker (and thus potentially liable under § 1983) if they are responsible for making law or setting policy in a given area of municipal business, *Sweetin*, 48 F.4th at 392, while a final decisionmaker can be liable under that law only if they possess "final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function."  *Bolton*, 541 F.3d at 549.

### (1) Pretextual Seizures

Stewart brings a claim against Gilley in his official capacity for *Monell* liability regarding pretextual seizures in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. [doc. #81].

11

Stewart contends that RPSO, through Gilley, has developed and maintained formal or informal policies, practices, and customs that exhibit deliberate indifference to the constitutional rights of individuals in Richland Parish. Specifically, he alleges that RPSO's practices include:

i.  Failing to properly train, supervise, or discipline police officers and supervisors regarding constitutional traffic stops; and

ii.  Contributing to the development of, or otherwise failing to stop, a racially-motivated municipal-wide policy, practice, and custom of seizing individuals under false pretenses—chiefly, claiming that the stopped individuals were speeding when they were not.

(Second Amended Complaint [doc. #81, pp. 24-25]).

Stewart further alleges that "RPSO's policy, practice, and custom of seizing Black drivers under false pretenses violates the equal protection clause of the Fourteenth Amendment . . . RPSO treats Black drivers differently than they would White drivers, and that different treatment stems from RPSO's discriminatory intent." *Id.* at pp. 25-26.

Gilley moves to dismiss this claim, arguing that Stewart's pleading is entirely devoid of any allegations or evidence demonstrating a pattern of pretextual stops by RPSO. (Memo in Support of M/Dismiss [doc. #92-1, p. 13]). The Court agrees with Gilley.

Stewart does not identify an officially promulgated policy that instructed police to engage in the alleged unconstitutional pretextual seizures at issue here. Consequently, Stewart necessarily relies "on a custom or practice so common and well settled as to constitute a custom that fairly represents municipal policy, and [a]ctual or constructive knowledge of such custom must be attributable to the policymaker." *Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (citation omitted). However, the only alleged pretextual traffic stop alleged against RPSO is Stewart's own. While Stewart asserts that there have been other pretextual traffic stops, he points to only one incident in which LSP Troopers pulled over Antonio Harris in Richland Parish before attacking

him.  (Second Amended Complaint [doc. #81, p. 10]).  This allegation against LSP—not RPSO—cannot establish a widespread practice within RPSO.

Additionally, while Stewart cites five instances of excessive force by RPSO, none of those incidents involve allegations of pretextual traffic stops.  *Id.* at pp. 14-15.  The Fifth Circuit has made clear that "isolated acts" cannot establish the existence of a custom or policy.  *Russell*, 59 F.4th at 752.  A plaintiff must describe more than the lone incident that gave rise to his own injury. *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation omitted). Instead, a plaintiff must show that prior incidents "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice.'"  *Webster*, 735 F. 2d at 842.  The single instance of Stewart's traffic stop is insufficient to establish a widespread pattern or policy necessary for *Monell* liability.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Stewart's claim against Gilley for *Monell* liability regarding pretextual seizures in violation of 42 U.S.C. § 1983 and that the claim be **DISMISSED WITH PREJUDICE**.

### (2) Excessive Force

Stewart also brings a claim against Gilley in his official capacity for *Monell* liability regarding excessive force in violation of 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments.  [doc. #81].

Stewart alleges that RPSO "has developed and maintained formal or informal policies, practices, and customs exhibiting deliberate indifference to the constitutional rights of individuals

in Richland Parish."  (Second Amended Complaint [doc. #81, p. 27]).  Stewart contends these

policies, practices, and customs include:

i)      Failing to properly screen before hiring and failing to properly supervise, discipline, train or control police officers and supervisors under its jurisdiction and control, including the defendant officers, supervisors, and commanders;

ii)     Failing to provide adequate or reasonable supervision, discipline, monitoring, or control of officers, including of the specifically-named individual defendants herein;

iii)    Failing to take reasonable and necessary steps to properly investigate, charge, maintain, or defend disciplinary action for misconduct against officers or supervisors;

iv)     Failing to take appropriate remedial action for officers believed to have previously used excessive force;

v)      Failing to properly train, supervise, or discipline police officers and supervisors regarding the appropriate use of force;

vi)     Condoning, approving, or authorizing a culture and environment within the RPSO in which personnel, including the individual defendants named herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory officers and that their misconduct would not be thoroughly investigated or sanctioned and would instead be tolerated; and

vii)    Contributing to the development of, or otherwise failing to stop, a racially-motivated municipal-wide policy, practice, and custom of using excessive force against Black citizens.

*Id.*

Gilley seeks to dismiss this claim, primarily arguing that all the cases Stewart has cited in

support of an excessive force policy are merely just allegations and fail to establish a policy.

(Memo in Support of M/Dismiss [doc. #92-1, p. 14]).  "Out of the six lawsuits referenced by

[Stewart], only one outlier resulted in a finding of liability for acts violative of the Constitution,

and even then not against Sheriff Gary Gilley."  *Id.* at p. 17. The one isolated event, Gilley

contends, cannot be enough to establish a policy, practice, or custom.  *Id.*  Stewart maintains that

he can properly allege a policy based on previous lawsuits against Defendants.  (Opp. to M/Dismiss

14

[doc. #102, p. 15]).  These prior instances cited by Stewart "[demonstrate] RPSO's persistent, widespread practice of using excessive force against Richland Parish citizens . . ." *Id.* at p. 16.

In essence, the parties are arguing over whether a RPSO policy, custom, or practice of excessive force has been established by Stewart.  "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 850 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).  Where prior incidents are used to prove a pattern, they "'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id.* (quoting *Webster*, 735 F.2d at 842).  A plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted).  A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

Stewart fails to allege a policy or custom that was the moving force behind the officers' alleged constitutional violations.  He cites no officially adopted, written policy.  Instead, he attempts to establish a custom amounting to a policy based on RPSO's prior incidents, including: (1) a 2004 incident where RPSO officers pepper-sprayed and physically beat a man while his arms were handcuffed behind his back; (2) a 2006 incident where RPSO officers beat a man although he was unarmed and not resisting arrest; (3) another 2006 incident where a man who was already handcuffed and in police custody was pepper sprayed and slammed onto a counter by a RPSO officer; (4) a 2006 incident where RPSO officers let loose a police dog on a man, and while the dog was biting the man, shot him in the back and then proceeded to beat the man in the face and

head while he was being handcuffed; and (5) a 2017 encounter where an RPSO officer handcuffed a man and then threw him against a table and slammed his head into a police vehicle, and once the man arrived at the detention center, was beat by RPSO officers resulting in a fractured skull. (Second Amended Complaint [doc. #81, pp. 14-15]).  Stewart relies on five alleged excessive force incidents spanning a thirteen-year period—four occurring in 2004-2006 and one in 2017.  (Second Amended Complaint [doc. #81, pp. 14-15]).  While these incidents are concerning, they are too few and too spread out over time to establish a persistent, widespread pattern necessary for *Monell* liability.

The Fifth Circuit has set a much higher threshold for demonstrating a pattern of constitutional violations.  In *Saenz v. City of El Paso*, the court found that twenty-one excessive force incidents over nineteen years were insufficient to establish a policy, reasoning that they amounted to isolated occurrences rather than a pervasive custom.  637 F. App'x 828, 832 (5th Cir. 2016).  In contrast, in *Barnes v. City of El Paso*, the plaintiff alleged twenty-one excessive force incidents from 2012 to 2016, but also provided statistical data supporting a systemic issue, which contributed to the court's finding of a pattern.  677 F. Supp. 3d 594, 608-10 (W.D. Tex. 2023).  In this case, Stewart has alleged only five incidents in a thirteen-year span, with no accompanying statistical evidence to suggest a broader pattern of excessive force within RPSO.  Moreover, when courts have found a pattern sufficient to establish a policy, the number of alleged incidents was significantly higher.  In *Howard v. City of Houston, Texas*, the court found thirty-five alleged incidents of excessive force sufficient to show a pattern.  No. CV-H-21-1179, 2022 WL 479940, at *7 (S.D. Tex. 2014).  Stewart's five incidents fall far short of this threshold.  *See also Armstrong*, 60 F.4th at *10 (nine constitutional violations over a twenty-four-year period and thousands of prosecutions are hardly sufficient to show a municipal custom); *Peterson*, 588 F.3d at 847.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Stewart's *Monell* liability claim against Gilley for excessive force in violation of 42 U.S.C. § 1983, and that the claim be **DISMISSED WITH PREJUDICE**.

### *(3) Inadequate Training, Supervising, and Discipling*

Stewart brings a claim against Gilley in his official capacity for *Monell* liability regarding inadequate training, supervising, and disciplining in violation of 42 U.S.C. § 1983. [doc. #81].

The failure-to-train standard is the same as that for municipal liability. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "'The failure to provide training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.'" *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. A plaintiff must show that "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberating indifferent in adopting its training policy." *Valle*, 613 F.3d at 544.

As to the second requirement for municipal liability, plaintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983. *See City of Canton*, 489 U.S. at 391-92. The plaintiff must establish a "direct casual link" between the municipal policy and the constitutional injury. *Valle*, 613 F.3d at 546. The Fifth Circuit has stated that the connection must be "more than a mere but for coupling between cause and effect. The deficiency in training must be the actual cause of the constitutional violation." *Id.* (internal quotes and

17

quotation marks omitted).  A court must ask: "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *City of Canton*, 489 U.S. at 391.

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547 (quoting *Bryan County*, 219 F.3d at 457).  Deliberate indifference is more than negligence or even gross negligence.  *Id.*  Usually, a plaintiff must show a pattern of similar violations.  *Id.*  But there is a single-incident exception whereby "deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *York v. Welch*, No. 20-40580, 2024 WL 775179, at *5 (5th Cir. 2024) (quotation omitted).  The Fifth Circuit has explained, however, "that the single-incident exception is generally reserved for those cases in which the government actor was provided no training whatsoever." *Id.* (quotation and alteration omitted).

Here, Stewart fails to allege facts sufficient to establish that RPSO's training policies were constitutionally inadequate.  Deliberate indifference is a stringent standard, requiring more than mere negligence—it demands proof that the municipality disregarded a known or obvious consequence of its training policies.  *Valle*, 613 F.3d at 547.  Typically, this requires a pattern of similar constitutional violations.  *Id.*  But Stewart cites only five incidents over a thirteen-year period, which falls well short of the threshold required to establish a pattern or meet the high standard of deliberate indifference.  *See* discussion *supra*.

Stewart also does not allege that RPSO officers received no training, which would be necessary to invoke the single-incident exception.  The Fifth Circuit has made clear that this exception applies only in cases where the officers were provided no training whatsoever on the

18

relevant issue. *York*, 2024 WL 775179, at *5. Because Stewart fails to allege either a pattern of similar constitutional violations or a complete lack of training, he has not established deliberate indifference under *Monell*.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Stewart's *Monell* liability claim against Gilley for inadequate training, supervising, and discipling in violation of 42 U.S.C. § 1983, and that the claim be **DISMISSED WITH PREJUDICE**.

### (4) Insufficient Screening or Inadequate Hiring

Stewart brings a claim against Gilley in his official capacity for *Monell* liability regarding insufficient screening or inadequate hiring in violation of 42 U.S.C. § 1983. [doc. #81].

To adequately plead a Monell claim for insufficient screening or inadequate hiring, a plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.*

In this case, the Second Amended Complaint alleges that Gilley failed "to properly screen before hiring" and that he is "responsible for the hiring . . . of all officers in RPSO." (Second Amended Complaint [doc. #81, pp. 6, 27]). These allegations are conclusory and lack the

specificity required to state a claim upon which relief can be granted. Conclusory statements without factual support are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Furthermore, in his response to the motion to dismiss, Stewart concedes his argument at this stage regarding Gilley's inadequate hiring practices "unless future discovery reveals relevant facts . . ." (Opp. to M/Dismiss [doc. #102, p. 13 n.3]). Gilley argues that Stewart has conceded the unworthiness of his claim and cannot rely on future discovery to support it. (Reply [doc. #105, pp. 2-3]).

Given Stewart's concession and the lack of sufficient factual allegations, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Stewart's *Monell* liability claim against Gilley for insufficient screening or inadequate hiring in violation of 42 U.S.C. § 1983, and these claims be **DISMISSED WITH PREJUDICE**.

### III.    Violation of Louisiana Revised Statute § 44:1

Stewart brings a claim against Gilley in his official capacity for violation of Louisiana Revised Statute § 44:1. [doc. #81].

The LPRA is designed to uphold "the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which government affairs are conducted." *Trahan v. Larivee*, 365 So. 2d 294, 298 (La. App. 3 Cir. 1978). The Louisiana Supreme Court "has determined that the right of access to public records is a fundamental right guaranteed by La. Const. art. XII § 3, and whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access." *Landis v. Moreau*, 2000-1157 (La. 2/21/01), 779 So.2d 691, 694. Under the LPRA, "any person of the age of majority may inspect, copy, or reproduce or obtain a reproduction of any public record." LA.

20

REV. STAT. § 44:31(B)(1).  A person denied access to public records, under the Public Records Act, has the right to initiate an action seeking a writ of mandamus directing the production of the requested records.  LA. REV. STAT. § 44:35(A) and (B).

The following requirements are necessary for invoking a mandamus remedy under the LPRA: "(1) a request must be made; (2) the requester must be a "person"; (3) the request must be made to a custodian; (4) the document requested must be a 'public record'; (5) the document requested must exist; and (6) there must be failure by the custodian to respond to the request." *Lawrason v. St. Bernard Par. Pub. Sch. Dist.*, 2022-0319 (La. App. 4 Cir. 11/9/22), 351 So. 3d 814, 818.  Here, the parties dispute whether Stewart himself can bring this claim, given that his attorney, rather than Stewart, submitted the records request.

Gilley argues that Stewart does not have a viable claim because his attorney, Abby Bloetscher ("Bloetscher"), made the request, rather than Stewart himself.  (Memo in Support of M/Dismiss [doc. #92-1, p. 23]).  According to Gilley, Bloetscher did not identify herself as Stewart's attorney or indicate that she was requesting records on his behalf.  *Id.*  Gilley asserts that under the LPRA, only the individual who made the request has standing to bring suit.  *Id.* at p. 24.  In support of this argument, Gilley attached Bloetescher's records request to his motion to dismiss. [doc. #92-3].  In response, Stewart contends that the Louisiana Supreme Court has long recognized that the LPRA must be construed expansively.  (Opp. to M/Dismiss [doc. #102, p. 27]).  He further argues that Bloetscher submitted the request as his agent.  *Id.* at p. 29.   In reply, Gilley maintains that Stewart cannot bring this claim.  (Reply [doc. #105, pp. 8-9]).

When a court rules on a 12(b)(6) motion, the court is limited to the actual contents of the pleadings and the documents attached or incorporated by reference into a complaint.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Court may consider

documents attached to a motion to dismiss under rule 12(b)(6), provided they are referred to by the complaint and are integral and central to the plaintiff's claim. *Id.* at 498-99; *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) (considering insurance contracts attached to a motion to dismiss because they were referenced in the complaint and central to the plaintiffs' claims). Here, Gilley attached Bloetscher's records request to his motion. [doc. #92-3]. Because Stewart's claim for injunctive relief and/or a writ of mandamus necessarily depends on the existence of a valid records request, the request is central to his claim. Indeed, Stewart's Second Amended Complaint explicitly states that he "sought the previously listed public records from the records custodian of RPSO." (Second Amended Complaint [doc. #81, p. 32]). Because the request is referenced in the complaint and is central to Stewart's claims, the Court will consider the document attached to Gilley's motion.

The Louisiana Supreme Court has not directly addressed whether a principal may bring suit under the LPRA when an agent submits the records request. However, multiple Louisiana circuit courts have considered the issue. The prevailing rule among these courts is that "only the person who makes the request to inspect or copy a public record and is denied that right belongs to the class of persons to whom the law grants the cause of action." *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 2009-1349 (La. App. 1 Cir. 4/8/10), 37 So. 3d 1029, 1035; *see also Clayton v. Cannizzaro*, 2015-1107 (La. App. 4 Cir. 6/15/16), 197 So. 3d 238, 244 (holding that only the individual denied the right to inspect a public record may seek mandamus relief); *Vourvoulias v. Movassaghi*, 2004-0262 (La. App. 1 Cir. 2/11/05), 906 So. 2d 461, 465 (holding that general counsel for a construction company is not within the class of persons to whom the law grants the cause of action when the request was signed by a legal assistant for an outside law firm hired by the construction company to make the public records request). Some courts have

suggested that an explicit agency relationship may allow the principal to bring suit.  *See Indep. Wkly., LLC v. Lafayette City Marshal Pope*, 2016-282 (La. App. 3 Cir. 9/28/16), 201 So. 3d 951, 956 (holding that an agency relationship existed where a staff writer for Independent Weekly expressly stated that the request was made on behalf of Independent Weekly); *Plaquemines Par. Council v. Petrovich*, 629 So. 2d 1322, 1327 (La. App. 4 Cir. 1993) (holding that a parish council could not bring suit to enforce a records request where individual council members had submitted the request in their personal capacities rather than their official capacities).

Here, Stewart did not submit the request—Bloetscher did.  [doc. #92-3].  Thus, under the general rule, Stewart cannot bring the claim.  Stewart argues that Bloetscher acted as his agent, but only one Louisiana circuit court—the Third Circuit—has clearly recognized an agency-based exception.  Even in that case, the request explicitly stated that it was made on behalf of another party.  That is not the situation here.  Although Bloetscher's request bears her law firm's letterhead, that alone does not establish that she was acting on behalf of Stewart.  Nowhere in the request is Stewart mentioned.  Because there is no express indication of an agency relationship, and because Stewart himself did not submit the request, his claim cannot proceed.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Stewart's claim against Gilley for violation of Louisiana Revised Statute § 44:1, and that the claim be **DISMISSED WITH PREJUDICE**.

## IV.    State Tort Claims

Stewart brings state tort law claims against Gilley in his official capacity under theories of *respondeat superior* for battery, assault, and intentional infliction of emotional distress.  [doc. #81].

Gilley neither moved to dismiss nor addressed these claims in his reply to Stewart's opposition. Therefore, these claims remain standing against Gilley.

### Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. #92] filed by Defendant Sheriff Gary Gilley be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff Glen Stewart's *Monell* liability claims pursuant to 42 U.S.C. § 1983 and his claim for violation of Louisiana Revised Statute § 44:1 against Defendant Sheriff Gary Gilley be **DISMISSED WITH PREJUDICE**.[3]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

---

[3] This does not result in the dismissal of all claims against Gilley. Three state tort claims remain asserted against him.

24

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS**

**AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 20th day of February, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE